IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JANE ANN P.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[2]

Defendant.

Case No. 6:17-cv-00079-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff Jane P. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the Social Security Administration (SSA) is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to Defendant only as Commissioner of Social Security. *Pierce v. Commissioner of Social Security*, No. 3:15-CV-00325-AC, 2018 WL 2376556, at *1 (D. Or. May 23, 2018).

Page 1 – OPINION AND ORDER

Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

## BACKGROUND

On September 18, 2012, plaintiff applied for DIB pursuant to Title II. Plaintiff alleged disability beginning November 1, 2008, due to Hepatitis C, migraine headaches, chronic fatigue, chemical sensitivities, and degenerative disc disorder. Plaintiff's DIB application was denied initially and upon reconsideration, with the reconsideration denial dated July 25, 2013. An administrative hearing was held before an Administrative Law Judge ("ALJ") on May 20, 2015. At the hearing, plaintiff testified and was represented by counsel. A vocational expert also testified. On July 16, 2015, the ALJ denied plaintiff's DIB application, finding that she was not disabled on September 30, 2011, her date last insured ("DLI") for Title II purposes. After the Appeals Council denied review, plaintiff filed the present complaint before this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); see also *Hammock v. Bowen*, 879 F.2d 498, 501 (9th. Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quotation marks omitted)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). However, a reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; see also *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* 416.920(a)(4)(i), (b). Tr. 20. At step two, the ALJ found that plaintiff had the following severe impairment as of the alleged onset dates: lumbar spine degenerative disc disorder, cervical spine degenerative disc disorder, right hip degenerative joint disease, arthritis, and migraines. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal

"one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d). Tr. 21.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. 404.1520(e); *id.* § 416.920(e). The ALJ found that plaintiff

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to no more than frequent climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds. The claimant is limited to no more than occasional bilateral overhead reach and no more than frequent bilateral handling as well as no more than frequent balancing, stopping, kneeling, crouching, and crawling. She must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas.

Tr. 22. At step four, the ALJ concluded that plaintiff was capable of performing past relevant work as a clothing store owner, billing instructor, clothing store manager, and account manager. The ALJ denied plaintiff's application for DIB without proceeding to step five because she "was not under a disability within the meaning of the . . . Act at any time from November 1, 2008, the alleged onset date, through September 30, 2011, the date last insured." Tr. 27.

## DISCUSSION

Plaintiff contends that the ALJ committed harmful errors with respect to her step two, four, and five analysis. First, plaintiff argues the ALJ improperly rejected several of plaintiff's impairments as non-severe at step two. Secondly, she avers the ALJ erred in failing to credit her subjective symptom complaints and improperly evaluating the medical evidence of her treating physicians, Dr. House and Dr. Klos. Finally, plaintiff avers that the ALJ failed to conduct an adequate analysis of her past relevant work experience and that the ALJ failed to properly assess whether plaintiff's RFC was sufficient to perform other work in the national economy. I address each argument in turn.

I.  *Plaintiff's Subjective Symptom Complaints*

I begin with plaintiff's argument that the ALJ failed to provide legally sufficient reasons to reject her testimony of existing limitations that plaintiff asserts amount to a qualifying disability. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of…symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The ALJ makes such a determination amidst a two-step process that first evaluates the existence of an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms and, secondly, addresses the intensity, persistence, and limiting effects of the alleged symptoms based on an examination of the entire record. 20 C.F.R §§ 404.1529(a) & (c)(1); 416.929(a) & (c)(1). Within this analysis, the ALJ has discretion to dismiss portions of the plaintiff's testimony so long as the adjudicator provides "clear and convincing reasons" for doing so. A general assertion that the claimant is not credible is insufficient; the ALJ must "state which…testimony is not credible and what evidence suggests that the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Moreover, the reasons proffered by the ALJ for discrediting a claimant's testimony must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the [testimony]." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhardt*, 278 F.3d 947, 959 (9th Cir. 2002).

At the administrative hearing, the ALJ asked plaintiff a series of questions related to the ownership and management of her clothing business through the end of 2008, the time at which the business was sold. Plaintiff responded:

> [I]n the end I got sick and was unable to continue to work. I started having more flare ups of issues I have with some chemical sensitivities, and I started having an increase in problems with my back and my hip. The job required quite a bit of lifting and standing. I was having problems standing. I started having increased pain in my leg, my left leg, and my left foot. I got sick in the summer of 2008 and I was in bed for almost a month. And it seemed as if, after that point, I just was not ever able to get my stamina back to a level where I was able to even go in there part-time. My daughter had come in and ran the business for me most of that summer. And I tried going back at different times, and I just was not able to do it, so I made a decision to sell my store at the end of 2008.

Tr. 47-48. Plaintiff stated that, following the close of her business, she attempted to go back to work but "just wasn't able to do that." Tr. 51. Plaintiff addressed an instance in the past in which she had to leave her employment due to sickness and "was able to go back to work about a year later." Tr. 51. However, after closing her store in 2008, plaintiff stated that she was unable to go back to work due to issues with chemical sensitivities, problems with sitting and standing for long periods of time, and "a lot of [fatigue]." Tr. 51. Plaintiff elaborated upon these issues with further testimony about her daily activities, pointing to limitations such as not be able stand for more than six hours, issues with nausea, migraines, and her need to lay down most of the day on "bad" days. Tr. 53-56. In her function report, plaintiff states that the biggest inhibitors of engaging in substantive work include "the overwhelming fatigue and constant pain that [she is] in day-to-day." Tr. 215.

Plaintiff lives with her husband. Plaintiff's husband works until "5-6 pm" and assists with grocery shopping, brings home take out for dinner, pays household bills, and assists with feeding and caring for the couple's cat. Tr. 215-20. Plaintiff does engage in light house work, including making her bed, washing dishes, and dusting "high furniture." Tr. 219. Plaintiff is no

longer able to perform any yardwork or gardening, but does "sometimes hose off [the] deck." Tr. 219. She also prepares a variety of simple meals when she is able, but does have to sit on a stool to do so and is unable to use utensils such as can openers or peelers due to hand cramping. Additionally, plaintiff showers "a few times a week" and dresses herself before her husband gets home from work, but baths less frequently than she used to and does not "get out of her pajamas everyday." Tr. 218. She does gentle stretching and yoga "every week / daily as tolerated." Tr. 220. Plaintiff also takes care of her six year old granddaughter on occasion. When she feels able, plaintiff walks half a block to pick her up from school and watches her for three hours until plaintiff's daughter gets off of work. Plaintiff noted that her granddaughter is "quite independent" and that she "often makes [plaintiff] an after school snack." Tr. 216.

The ALJ found that plaintiff's symptoms "could reasonably be expected to cause the alleged symptoms . . . however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 23. The ALJ noted first that plaintiff's "activities of daily living do not evince the frequency and severity of the symptoms alleged..." *Id.* Secondly, the ALJ pointed to a number of inconsistencies between plaintiff's symptoms allegations and objective medical evidence with respect to each alleged disorder.

The ALJ cited several specific examples of inconsistent statements in plaintiff's own testimony of her daily activities. First, the ALJ noted that despite the absence of evidence evincing earnings after the plaintiff's alleged onset date, medical records reveal statements made by plaintiff to her providers that she was working part-time. Moreover, the ALJ listed activities noted by plaintiff that are arguably dispositive of that fact that "[plaintiff] is in stable condition, can function well at home, and that her pain was essentially manageable." *Id.* These activities

Page 7 – OPINION AND ORDER

include: caring for her granddaughter, practicing yoga and stretching at home, daily walks, bathing and dressing herself, preparing her own meals and completing housework, driving and riding in a car, shopping for food and medication, walking for a mile on a good day, visiting family for leisure, and traveling to other states. *Id.* Secondly, the ALJ addressed inconsistencies in plaintiff's objective medical record that "discredit [her] allegations as to the intensity, persistence, and limiting effects" of each respective symptom. *Id.*

After reviewing the record, I find that the ALJ improperly discredited plaintiff's symptom testimonies on the grounds that her daily living evinced inconsistencies in the alleged intensity and severity of the symptoms. ALJ's must be "especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1287 at n.7). "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Id.*

Here plaintiff does engage in physical activities such as stretching and practicing yoga, walking up to a mile a day, and walking to pick her granddaughter up from school. She is also able to prepare her own meals, bath and dress herself, and engage in light housework. However, those activities do not necessarily elicit an ability to maintain regular employment. Absent specific evidence suggesting as much, the ALJ's discrediting of plaintiff's daily activity testimony was improper.

The ALJ's improper credibility analysis on the basis of plaintiff's daily activities testimony amounts to harmless error, however, because the ALJ provided substantial objective

medical evidence. Discussion of that evidence allows this Court to infer that the ALJ's decision to discredit plaintiff's testimony was not arbitrary.

The ALJ drew out a substantial amount of medical evidence to support the assertion that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible..." Tr. 23. The ALJ addressed each of the impairments concluded in step two and identified statements made by both treating and examining physicians that contradicted plaintiff's symptom testimony. The ALJ began with review of plaintiff's alleged lumbar spine degenerative disc disorder, citing notes by plaintiff's treating physician Dr. Martin Klos that plaintiff "was not in acute distress, that her neck showed no signs of jugular venous pressure or thyroid enlargement, and that her gait was normal." Tr. 24 (citing Tr. 416). The ALJ further supported this analysis with specific reference to notes made during a physical examination by physician Gregory Moore. **Tr. 24**.

Next, the ALJ addressed plaintiff's alleged cervical spine degenerative disc disorder. The ALJ pointed to plaintiff's statements to Dr. Klos that "she did not feel any rheumatic symptoms during her musculoskeletal examinations," that she felt relief when taking her prescribed medications. *Id.* The ALJ further referenced Gregory Moore's notes following a physical examination of plaintiff suggesting that plaintiff's "cervical range of motion was normal with some mild stiffness with rotation." *Id.* The ALJ went on to address plaintiff's right hip degenerative disc disease with comparable specificity to that offered in preceding discussions, introducing conflicting examination notes from Gregory Moore, M.D., Carlyle Bolstad, PA/jmj, and Jacob Tom, M.D. **Tr. 25.**

Finally, the ALJ addressed inconsistencies in the medical record to plaintiff's alleged migraines. Most notably, the ALJ presented the examination notes of Eric Spencer, M.D.

Page 9 – OPINION AND ORDER

suggesting that claimant is "able to address some of the symptoms on her own with breathing exercises" and CT scan results showing "no acute pathology or any other abnormality." Tr. 25. Although plaintiff's medical records do indicate that she was consistently diagnoses with "variants of migraine with intractable migraine so stated," the ALJ notes the absence of evidence suggesting that these diagnoses required serious medical intervention and that medical records suggest that plaintiff felt relief when taking her prescribed pain medication. *Id.*

The ALJ provided substantial evidence from the record with sufficient specificity to allow me to determine that the decision to discredit plaintiff's statements as to the intensity, persistence, and limiting effects of her impairments was proper. The ALJ discussed each severe impairment established at step two and provided objective medical evidence contradicting plaintiff's testimony with respect to each impairment.

In sum, the ALJ supported her decision to give limited weight to plaintiff's symptom testimony with clear, convincing reason supported by substantial evidence. Although the ALJ improperly discredited plaintiff's subjective daily activities testimony, the extent to which that testimony was discredited amounts to harmless error when viewed in light of the objective medical evidence. The inconsistencies in the objective medical evidence provide cogent reasons for this Court to find that the ALJ did not act arbitrarily in discrediting plaintiff's statements.

II.  *Medical Opinion Evidence*

Plaintiff challenges the ALJ's treatment of two medical opinions: the opinion of treating physician Martin Klos, M.D. and the opinion of treating physician Teresa House, M.D. Specifically, plaintiff avers that the ALJ did not properly explain how Dr. Klos' opinion of claimant's functioning contradicts his own treatment notes and plaintiff's own statements or how Dr. House's opinions regarding plaintiff's limitations are contrary to objective medical

evidence and the opinions of other medical experts. Plaintiff further argues that the ALJ did not cite specific medical records to contradict both Dr. Klos' and Dr. House's opinions and that the ALJ committed harmful error by not relating either opinion back to plaintiff's DLI, September 30, 2011.

There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202, *accord* 20 C.F.R. § 404.1527(d). Accordingly, if a treating physician's medical opinion is not inconsistent with other substantial evidence in the record, and is supported by medically acceptable clinical findings, the treating physician's opinion is given controlling weight. *Id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons." *Lester*, 81 F.3d at 830.

"The ALJ must explicitly reject medical opinions, or set forth specific, legitimate reasons for crediting one medical opinion over another." *Id.* at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Id.* at 1013.

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725).

In other words, "[t]he ALJ must do more than offer his conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn*, 495 F.3d at 631.

Finally, "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) (internal quotation marks and citations omitted). A physician's opinion should be considered when it relates to the period before the claimant's DLI and before the ALJ's decision is rendered. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011) (citing 20 C.F.R. § 404.970(b)).

The ALJ proffered the following reasons for giving little weight to the testimony of Martin Klos, M.D.:

> Dr. Klos stated that the claimant cannot walk for distances greater than a mile and can only rarely reach down towards the floor. This is both contrary to Dr. Klos' treatment notes as well as the claimant's statements about her own functioning.

Tr. 26. Similarly, the ALJ afforded little weight to the testimony of Teresa House, M.D. for the following reasons:

> Dr. House's opinions are contrary to the objective medical records and the opinions of the other medical experts.

*Id.* The ALJ further diminished the weight of Dr. Klos' and Dr. House's conclusions regarding plaintiff's limitations because they were issued after plaintiff's DLI and, even though "[both physicians] state that the claimant's extraordinary limitations existed at the claimant's DLI, there

Page 12 – OPINION AND ORDER

is no support for this in the medical records." *Id.* Earlier in her findings, the ALJ afforded partial weight to the Disability Determination Explanations given by William Habjan, D.O. and Neal E. Berner, M.D.

I will briefly review the medical opinions in question. On May 12, 2015, Dr. Klos submitted a Residual Functional Capacity form. Dr. Klos' RFC asserts that plaintiff's impairments prevent her from sitting upright or standing for six to eight hours because her pain requires constant position changes and that plaintiff must lie down during the day due to fatigue and the need to "rest often." Tr. 868. He further states that plaintiff can rarely (0-30% of the time) reach up above her shoulders or reach down towards the floor, although she can frequently (30-70% of the time) reach down to waist level, carefully handle objects, and can handle with fingers. *Id.* According to Dr. Klos, plaintiff can walk non-stop for less than 1 mile and can lift and carry between 5-10 pounds during an eight hour period or regularly/daily. *Id.* Dr. Klos references x-rays and lab tests as objective medical evidence for the pain described in the RFC and finally concludes that plaintiff cannot continue or resume work due to chronic pain and fatigue.

Dr. House had been plaintiff's primary care provider for eight years as of May 2015 when she completed an RFC form. In her form, Dr. House indicates that plaintiff cannot stand or sit for six to eight hours due to pain requiring plaintiff to change positions frequently and to lie down during the day. Dr. House estimates that plaintiff can walk up to ½ block non-stop and that she can rarely (0-30% of the time) reach above her shoulders, down to waist level, or down towards the floor; plaintiff can frequently (30-70% of the time) carefully handle objects and handle with her fingers. Dr. House's RFC further noted that plaintiff can lift and carry less than

5 pounds during an hour period or regularly/daily. Finally, several portions of the form assert that plaintiff cannot make it through an 8 hour work day due pain, fatigue, and nausea.

The ALJ's cursory reduction in the weight of Dr. Klos' and Dr. House's opinions amounts to reversible legal error. It is incumbent upon the ALJ to provide substantial evidence that amounts to clear and convincing reason for affording a treating physician's opinion anything less than controlling weight. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Rather than providing a detailed and thorough summary of the relevant facts and conflicting evidence made available in over 500 pages of medical records, the ALJ made generalized assertions that leave this Court with little to aid in understanding the basis for her conclusions.

The ALJ used the fact that "Dr. Klos stated that the claimant cannot walk for distances greater than a mile and can only rarely reach down towards the floor" as her sole evidentiary basis for establishing contradiction in Dr. Klos' treatment notes and plaintiff's statements. Tr. 26. Although the Commissioner points to apparent contradictions in the evidence in his brief, such contradictions were not made apparent in the ALJ's ruling. Further, given the longstanding history between plaintiff and both physicians and the numerous reports referenced by both physicians predating plaintiff's DLI, the ALJ incorrectly refused to relate back both opinions to the DLI.

In failing to develop her analysis of the weight afforded to Dr. Klos' and Dr. House's medical opinions beyond mere conclusions, the ALJ committed harmful legal error and remand is appropriate. Usually, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). "[T]he decision whether to remand for further proceedings turns

upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citing *Lewin*, 654 F.2d at 635).

As here, remand for further proceedings becomes appropriate when "the government has pointed to evidence in the record that the ALJ overlooked, and explained how that evidence casts into serious doubt the claimant's claim to be disabled." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)). Because the ALJ did not provide a specific, legitimate reason to reject Dr. House and Dr. Klos' testimony, the ALJ erred in her assessment of both treating physician's opinions. Plaintiff argues that if appropriate weight had been afforded to Dr. Klos' and Dr. House's opinions, then plaintiff's disability would be clearly established. However, the government raises questions in their brief about plaintiff's disability by pointing to evidence that the ALJ overlooked. In light of these ambiguities, the record is not fully developed and a remand for further proceedings would serve a useful purpose in this instance.

III. *Classification of Impairments*

Plaintiff argues that the ALJ committed harmful legal error by failing to include chronic hepatitis C, chemical sensitivities, bilateral shoulder pain, elbow pain, vitamin D deficiency, radiculpathy, spondylosis, neuropathy, and sciatic pain as severe impairments in her step two analysis. The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen v. Yuckart*, 482 U.S. 147, 153-54 (1987). The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R. §§ 404.1512, 416.912. An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in

original) (citing *Smolen*, 80 F.3d at, 1290). The ALJ is required to consider the combined effect of all of the claimant's impairments on her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Thus, if the ALJ determines that a claimant has a severe impairment at step two, the sequential analysis proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not. SSR 96-9p, 1996 WL 374184 (July 2, 1996). Where an ALJ fails to identify a severe impairment at step two, but s considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, the error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

A severe impairment is defined as "an impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A non-severe impairment is defined as "an impairment or combination of impairments...[that do not] significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).

At step two, the ALJ found that the plaintiff suffers from the following severe impairments through the date last insured: lumbar spine degenerative disc disorder, cervical spine degenerative disc disorder, right hip degenerative joint disease, arthritis, and migraines. Additionally, the ALJ addressed several non-severe medically determinable impairments including obesity, tinea, chronic Hepatitis C, mild peripheral neuropathy, and Vitamin D deficiency. Each of the non-severe impairments found by the ALJ were supported by reference to plaintiff's medical records. Finally, the ALJ addressed a number of conditions that present after her date last insured including depression related to plaintiff's chronic pain, left-shoulder injury, chronic sialadenitis of the right parotid gland, hypertension, and a right ankle sprain. The

ALJ correctly found that diagnosis of these conditions was made after plaintiff's date last insured and dismissed the diagnoses as not medically determinable for the relevant time period. *Id.*

The ALJ committed harmful error when she failed to identify plaintiff's chronic Hepatitis C as a severe impairment at step two and did not account for the full scope of the impairment in subsequent steps. When afforded controlling weight (assumed *arguendo*), the opinions of plaintiff's treating physicians, Dr. Klos and Dr. House, establish that plaintiff's chronic Hepatitis C significantly limits her ability to do basic work activities. In her RFC, Dr. House attributes plaintiff's need for extensive rest and limited endurance to fatigue caused by Hepatitis C. Dr. Klos notes that plaintiff's Hepatitis C is a factor in the scope of limitations that prevent her from maintaining regular employment and adversely affect her muscles. Throughout the record, medical evidence attributable to Dr. Klos, Dr. House, and other treating physicians unambiguously provides that plaintiff's Hepatitis C leads to severe chemical sensitivity and fatigue. When determining plaintiff's residual functional capacity at step three, the ALJ accounted for plaintiff's chemical sensitivity when she concluded that "[s]he must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas." However, the ALJ failed to address plaintiff's debilitating fatigue, a reasonably attributable symptom of her chronic Hepatitis C. As such, the ALJ's error of omitting chronic Hepatitis C from among the list of severe impairments at step two was not remedied by appropriate treatment at subsequent steps. This omission amounts to harmful legal error and must be addressed upon remand.

IV.  *Plaintiff's Past Relevant Work Experience*

The omission of Hepatitis C as a severe impairment at step two and the improper treatment of the medical opinions of plaintiff's treating physicians creates concern with the remainder of the ALJ's analysis at steps four and five. Prior to determining whether a claimant

can perform any past relevant work at step four, the ALJ determines the claimant's residual functional capacity ("RFC"). The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating the RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe" and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical questions posed to a vocational expert ("VE") at step four. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

At the hearing, the ALJ posed two hypotheticals to the VE. The first included limitations on frequent climbing of ramps, stairs, ladders, ropes, or scaffolds; limitations on no more than occasional bilateral overhead reach and no more than frequent reach in other directions; and limitations to no more than frequent bilateral handling as well as no more than frequent balancing, stooping, kneeling, crouching, and crawling. The second hypothetical addressed limitations on concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas. Neither hypothetical accounted for plaintiff's fatigue resulting from chronic Hepatitis C.

In her cross examination of the VE, Plaintiff's attorney modified the hypothetical to include two additional rest breaks of 10-15 minutes beyond the standard breaks afforded in competitive employment. In response, the VE stated that breaks of this nature are "normally not allowed" and that they "certainly [have] an effect on their workday." Tr. 65-66. Plaintiff's

attorney again modified the hypothetical to include absences of two days of work or more, absences that the VE noted as "indicative of being not reliable." Tr. 66.

The ALJ erred by failing to address the scope of limitations resulting from plaintiff's Hepatitis C in the hypothetical posed to the VE at step four. If, *arguendo*, the statements of treating physicians Dr. Klos and Dr. House are given controlling weight, then Hepatitis C should have been listed as a severe impairment at step two and the limitations therein considered at step four. On remand, the ALJ must apply the correct legal standard when considering the weight attributable to plaintiff's treating physicians. Reconsideration of those opinions will impact the ALJ's treatment of plaintiff's impairments at steps two and four. Should the ALJ determine that claimant cannot perform any PRW pursuant to the analysis at step four, he or she must move to a proper adjudication of plaintiff's capacity to perform other work that exists in significant numbers in the national economy at step five.

///

///

///

///

///

///

///

///

///

///

///

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence in the record because the ALJ failed to properly consider the opinions of Ms. Porter's treating physicians. Thus, the Commissioner's decision is REVERSED and REMANDED. Upon remand, the Commissioner should reassess the opinions of plaintiff's treating physicians Martin Klos and Teresa House; plaintiff's ability to perform past relevant work in light of the weight afforded to the medical opinions and proper treatment of plaintiff's chronic Hepatitis C diagnosis; and finally, continue in the sequential evaluation process as appropriate. This action is dismissed.

**IT IS SO ORDERED.**

Dated this 28th day of September 2018.

*Ann Aiken*
Ann Aiken
United States District Judge